# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

GEORGE E. GATES,

Plaintiff,

v.                                        CIVIL ACTION NO.   2:17–cv–03392

RODNEY MORRIS, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Before the court is (1) the Motion to Dismiss the Complaint, filed by defendants Rodney Morris ("Morris"), E. I. du Pont de Memours and Company ("DuPont"), The Chemours Company ("Chemours"), and Aetna Life Insurance Company ("Aetna") (collectively, "the defendants") on June 30, 2017 [ECF No. 7]; and (2) the Motion to Amend Complaint, filed by plaintiff George E. Gates on August 8, 2017 [ECF No. 17]. Briefing is now complete and the motions are ripe for adjudication. For the reasons stated below, the Motion to Amend Complaint is **DENIED** and the Motion to Dismiss Complaint is **GRANTED**.

### I.    Background

The plaintiff filed his complaint in the Kanawha County Circuit Court in West Virginia on March 21, 2017 advancing seven different counts of relief. Compl. ¶¶ 14–61 [ECF No. 1-1]. Count VII, in particular, states:

> While plaintiff disputes the claims as set forth above, against Aetna are covered by ERISA, to the extent the same are, plaintiff pleads that Aetna violated the same and by its violation caused harm to plaintiff which entitles plaintiff to benefits of the policy, costs, and

attorney's fees, and whatever other relief may be available or the Court deems available. Plaintiff acknowledges that if ERISA applies, Plaintiff's common law claims for bad faith are pre-empted.

Compl. ¶ 61.

The defendants removed this action on June 26, 2017. *See* Notice of Removal [ECF No. 1]. In their notice of removal and as a basis for federal subject-matter jurisdiction, the defendants maintain that the plaintiff expressly pleads an Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, claim in Count VII.

Thereafter, on June 30, 2017, the defendants moved to dismiss Counts I through VI on several grounds, including failure to state a claim upon which relief may be granted, and Count VII – the plaintiff's explicit ERISA claim – for failure to exhaust his administrative remedies under his ERISA plan prior to filing suit in federal court. The plaintiff did not contest the merits of the motion to dismiss in response, but instead simply requested leave to amend his complaint. The forthcoming proposed amended complaint, the plaintiff continued, would be consistent with his desire to only "bring 'ERISA type' claims against named defendants and wrongful termination claims against Defendants Moore, [DuPont], and [Chemours]." Pl.'s Combined Mot. & Mem. of Law in Resp. to Defs.' Mot. to Dismiss ¶ 2 [ECF No. 12].

On August 8, 2017, the plaintiff filed the Motion to Amend Complaint [ECF No. 17] and attached the proposed amended complaint to his Supplemental Motion to Amend Complaint, filed August 9, 2017 [ECF No. 18-1] ("Am. Compl."). In seeking to amend his pleading under Rule 15(a), the plaintiff stated that he moves "only to ensure that his ERISA claims are protected while dismissing claims of common law and statutory bad faith" and "to provide more detail concerning" his West Virginia Human Rights Act ("WVHRA") claims. Pl.'s Supp. Combined Mot. for Leave to File Am. Compl. & Mem. of Law in Supp. of Pl.'s Mot. to Am. Compl. ¶ 7 [ECF No. 18].

The defendants now seek a court order denying the plaintiff's request to amend the complaint as futile, and the adjudication of their motion to dismiss. When, as here, both a motion to amend the complaint and a motion to dismiss the complaint under Rule 12(b)(6) are pending, it is generally improper to resolve the motion to dismiss before deciding the motion to amend. *See Talley v. Ocwen Loan Servicing, LLC*, 673 F. App'x 329, 330 (4th Cir. 2017) (vacating dismissal under Rule 12(b)(6) and remanding to the district court to "specifically address" the plaintiff's motion to amend the complaint).

## II.     Legal Standard

Rule 15(a) directs that leave to amend a pleading "shall be freely given when justice so requires." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Id.* "Leave to amend a pleading should be denied only" in those rare occasions "when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* An amendment is "futile" if, for example, "the claim sought to be pleaded by amendment plainly would be subject to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Devil's Advocate, LLC v. Zurich Am. Ins. Co.*, 666 F. App'x 256, 267 (4th Cir. 2016).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must therefore be specific enough to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

## III.  Discussion

### A.  Motion to Amend the Complaint

The plaintiff asserts three different counts in the proposed amended complaint: (I) Breach of Contract; (II) Violation of the WVHRA; and (III) Claim for ERISA Benefits. The defendants advance several reasons upon which the court should find the proposed amended complaint futile and, all together, not actionable. One of their primary contentions concerns the purported failure of the plaintiff to plead Counts I and II in a manner that achieves facial plausibility necessary to pass muster under *Twombly* and *Iqbal*. As it relates to Count III, the defendants argue that the plaintiff failed to exhaust his administrative remedies before bringing an ERISA claim in federal court.

#### i.  Proposed Count I – Breach of Implied Contract

According to the proposed amended complaint, defendants Du Pont and Chemours previously employed the plaintiff. During his employment, Morris and Chemours purportedly advised the plaintiff that "he needed to go get the medical treatment he needed, [and] that his job would be waiting on him when he got back." Am. Compl. ¶ 16(ii). But for this alleged promise,

the plaintiff states, he would not have taken leave from work to receive medical treatment. *Id.* ¶ 17(iii). After returning from this leave and able to perform his duties as modified via an "accommodation" he was offered prior to taking leave, the plaintiff alleges that the "Defendants" reneged on that promise and informed him that his position had been terminated. *Id.*

Notably, the plaintiff does not allege who uttered these representations or their relationship to any of the named defendants, when or how they were made, the nature of the alleged accommodation, or any indicia of when these alleged events occurred. Moreover, aside from these untethered accusations of misconduct, the remaining accusations are almost entirely conclusions of law. The only permissible inference that remains, taking the facts alleged as true and disregarding legal conclusions and unadorned accusations of wrongdoing, is that at some point in time, the defendants' conduct was inconsistent with the expectations of the plaintiff. Even if this inference supported a finding of plausibility in the abstract, the proposed amended complaint still lacks several significant and requisite facts necessary to establish *this claim* for breach of implied contract, i.e., the creation of an implied contract, its terms, manner of acceptance, and consideration. Instead, the plaintiff alleges only that the parties "entered into a valid implied contract for employment, benefits, and retirement," and that the undefined "Defendants" breached that agreement. *Id.* ¶ 16(iii).

As a result, the proposed amended complaint does not provide either Morris or Chemours fair notice of what the plaintiff's breach of implied contract claim is or the grounds upon which it rests. Count I of the proposed amended complaint thus could not survive a motion to dismiss. Therefore, I **FIND** Count I of the proposed amended complaint futile.

### ii. Proposed Count II – Violations of the WVHRA

As stated by the Supreme Court of West Virginia:

> Under the WVHRA, it is unlawful "[f]or any employer to discriminate against [a protected] individual with respect to . . . tenure, terms, conditions or privileges of employment[.]" W. Va. Code § 5–11–9(1) [1998]. The WVHRA protects individuals from discrimination based upon, among other characteristics, "age," which is defined as "the age of forty or above[.]" W. Va. Code § 5–11–3(k) [1998]. Discrimination means "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, *age*, blindness, disability or familial status[.]" W. Va. Code § 5–11–3(h) (emphasis added).

*Knotts v. Grafton City Hosp.*, 786 S.E.2d 188, 193 (W. Va. 2016).

According to the proposed amended complaint, defendants Du Pont, Morris, and Chemours unlawfully terminated the plaintiff based upon his medical condition, age, or both. Am. Compl. ¶ 22. The plaintiff further avers that he requested and received an accommodation prior to his leave, that upon his return these same defendants failed to extend the same accommodation to him and made harassing statements about his age and disability—specifically, that an individual allegedly advised him that he should apply for social security disability and retire. *Id.* ¶¶ 28–33. In addition, the plaintiff alleges that his replacement following his termination was substantially younger. Am. *Id.* ¶ 22. The plaintiff claims he was denied pay, and will continue to be deprived of lost wages and benefits as a result of the defendants improper conduct.

Again, the proposed amended complaint lacks sufficient facts that move it from the realm of possibility into the realm of plausibility. The plaintiff does not attribute the alleged recommendation that he apply for social security disability and retire to a particular individual, or identify when these purportedly discriminatory statements were made. Rather, and without the requisite particularity, the plaintiff merely states that the "Defendants" uttered these comments, contends that at some point an accommodation was provided, infers that a promise to continue the accommodation was made by someone, and, although he could perform all essential functions of his job, he was nonetheless terminated. Absent, however, is any structural context of these alleged

events or facts in support of his claim that the persons or entities subject to the WVHRA failed to discharge their obligations thereunder. The plaintiff does not allege any facts from which to infer the scope of his job duties, the extent of his disability and its relation to the performance of his duties, or the character of the alleged accommodation he once received. Failure to provide a reasonable accommodation being necessary to establish a claim under the WVHRA, each defendant in this case lacks sufficient knowledge not only to understand the grounds upon which they are allegedly liable, but also to defend whether its actions were reasonable or unreasonable under the circumstances. *See Alley v. Charleston Area Med. Ctr., Inc.*, 602 S.E.2d 506, 514 (W. Va. 2004) ("A person bringing a claim for breach of the duty to make reasonable accommodation under the West Virginia Human Rights Act must prove," *inter alia*, that "a reasonable accommodation existed that met the plaintiff's needs" and that "the employer failed to provide the accommodation."). Similarly, there are no concrete allegations pleaded sufficiently for the court to find that the adverse employment decision was based upon an unlawful motivation.

Beyond these threadbare factual allegations, the only fact coming close to supporting this claim is the plaintiff's contention that a "substantially younger" employee replaced him. This assertion alone, however, provides a cornerstone only to speculation and unreasonable inferences that unlawful conduct had taken place. *See Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) ("[W]e . . . owe no allegiance to 'unwarranted inferences, unreasonable conclusions, or arguments' drawn from [well-pleaded] facts." (quoting *Monroe v. City of Charlottesville*, 579 F.3d 380, 385–86 (4th Cir. 2009)). Scenarios that are the products of speculation—not factual allegations—however, do not make what is possible plausible.

As such, Count II of the proposed amended complaint could not otherwise withstand a 12(b)(6) motion. Therefore, I **FIND** the proposed amended complaint on this point futile.

### iii. Proposed Count III – Claim for ERISA Benefits

The plaintiff's remaining proposed amended claim sets forth allegations against Aetna for the recovery and return of certain benefits arising from an ERISA plan. According to the proposed amended complaint, upon the creation of the insurance policy in question, Aetna knew or should have known that the plan was being issued to cover the plaintiff's "disability, health insurance, and/or supplemental income or retirement income." Am. Compl. ¶ 9. The plaintiff further alleges that he was promised these benefits until his death and, for a number of years, Aetna covered his claims—inferring, without expressly pleading, that up until a certain point in time, his claims were being administered in a manner consistent with his understanding of the policy. *Id.* ¶ 10. Thereafter, according to the proposed amended complaint, Aetna arbitrarily and illegally denied the plaintiff the benefits of his plan. *Id.* ¶¶ 11–13, 37.

Identified by its policy number in the complaint, the parties agree in their pleadings that the disputed plan is subject to ERISA. In opposing the plaintiff's motion, the defendants argue that the proposed amended complaint fails as a matter of law because the plaintiff failed to exhaust his administrative remedies as required under ERISA prior to bringing this lawsuit. On this subject, I stated previously:

> Although ERISA does not contain an explicit exhaustion requirement, courts have universally required exhaustion of benefit plan remedies prior to bringing suit in federal court. *See, e.g.*, *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005) ("An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." (citing *Makar v. Health Care Corp. of Mid-Atl. (CareFirst)*, 872 F.2d 80, 82 (4th Cir. 1989))). The exhaustion requirement is grounded in ERISA's "text and structure as well as the strong federal interest encouraging private resolution of ERISA disputes." *Makar*, 872 F.2d at 82. The exhaustion requirement, however, is not absolute. Under 29 C.F.R. § 2560.503-1(l), one of ERISA's implementing regulations promulgated by the Department of Labor ("DOL"),

> [I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.
> . . .
>
> The Fourth Circuit counsels that remand is generally the correct remedy in ERISA cases. Remand to the plan administrator furthers ERISA's statutory goal of giving plan administrators—not federal courts—primary responsibility for claims processing "by enabl[ing] plan fiduciaries to efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions." *Makar*, 872 F.2d at 83 (citation omitted). Remand, however, is not the appropriate remedy for every case. I determine, consistent with the federal circuit courts that have considered 29 C.F.R. § 2560.503-1(l)'s "deemed exhausted" provision, that waiver of ERISA's exhaustion requirement is the appropriate remedy where the plan failed to comply with procedures outlined in 29 C.F.R. § 2560.503-1 and the plan's failure to comply "denied the [plan] participant a reasonable review procedure." *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1213 (10th Cir. 2014).

*Turner v. Volkswagen Grp. of Am., Inc.*, No. 2:16-cv-06570, 2017 WL 3037803, at *3–4 (S.D. W. Va. July 18, 2017).

Here, the proposed complaint does not allege sufficient facts to permit a reasonable inference that the plaintiff took advantage of his plan's internal procedures to challenge the alleged rejection of his rights to benefits under the plan, or that the alleged denial of benefits by the defendants did not comply with the procedural requirements of 29 C.F.R. § 2560.503-1(g). The plaintiff also does not claim, nor is there any indication in the record that Aetna "denied the [plaintiff] a reasonable review procedure," beyond the plaintiff's bald and unsupported assertion that Aetna misrepresented the duration of his coverage and the scope of his rights under the plan.

As such, there is insufficient factual evidence to support an inference that the plaintiff exhausted his administrative remedies prior to bringing this lawsuit.

Furthermore, having made no "'clear and positive' showing of futility required to circumvent the exhaustion requirement," the court would otherwise be compelled by "the strong federal interest [of] encouraging private resolution of ERISA disputes" to dismiss the plaintiff's ERISA claims in order to afford him the opportunity to pursue the remedies under his employment benefit plan. *See Hickey v. Digital Equip. Corp.*, 43 F.3d 941, 945 (4th Cir. 1995); *Makar*, 872 F.2d at 82. Therefore, I **FIND** that it would be futile to grant the plaintiff's request to amend these claims because the plaintiff has failed to exhaust his ERISA plan's remedies before availing himself of federal court.

To summarize, each count comprising the proposed amended complaint could not survive a motion to dismiss under Rule 12(b)(6). *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). Because the proposed amended complaint is "clearly insufficient . . . on its face," *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986), I find the plaintiff's request for leave to amend under Rule 15(a) futile and, as a result, the plaintiff's Motion to Amend Complaint [ECF No. 17] is **DENIED**.

### B. Motion to Dismiss Complaint

Returning to the original complaint, the plaintiff advances seven different counts for relief: (I) Breach of Contract; (II) Unfair Claims Practices Act and Insurance Regulations; (III) Common Law Bad Faith; (IV) Reasonable Expectations; (V) Breach of Contract – Wrongful Termination; (VI) Violation of the WVHRA; and (VII) ERISA.

Although the parties do not directly brief this issue, it is readily apparent to the court that Counts I, V, and VI of the original complaint are analogous to the first two counts in the proposed

amended complaint. Moreover, the allegations comprising Counts I, V, and VI do not materially differ in substance or form from those already found to have failed to achieve facial plausibility pursuant to *Twombly* and *Iqbal*. Having already analyzed these claims under the appropriate 12(b)(6) standard, for purposes of judicial efficiency and on its own accord, the court **DISMISSES** Counts I, V, and VI for failure to state a claim upon which relief may be granted. The plaintiff's ERISA claim, Count VII of the original complaint, likewise is analogous to its proposed counterpart—Count III of the original complaint. For the same reasons articulated above, the court also **DISMISSES** Count VII to allow the plaintiff to pursue his administrative remedies.

The remaining counts – II, III, and IV – are each based in common or state law. In moving to dismiss, the defendants argue that these remaining claims are preempted by ERISA, a federal standard designed by Congress to establish a "uniform regulatory regime over employee benefit plans" and "ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

Codified at 29 U.S.C. § 1132(a), Congress empowered a participant or beneficiary of an ERISA plan to bring a civil action under federal law "to recover benefits due to him . . . enforce his rights under . . . , or to clarify his rights to future benefits under the terms of the plan." *Id.* "This integrated enforcement mechanism . . . is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Prince v. Sears Holdings Corp.*, 848 F.3d 173, 177 (4th Cir. 2017) (quoting *Davila*, 542 U.S. at 208). To this end, and in furtherance of Congress' mission "to subject employee benefit plans to only one body of national, uniform law," ERISA preempts certain state law claims. *Metro.*

*Life Ins. Co. v. Pettit*, 164 F.3d 857, 862 (4th Cir. 1998). The scope and applicability of ERISA preemption, however, is subject to considerable debate.

The Fourth Circuit Court of Appeals described recently the "murky waters" of ERISA preemption as "complex and contentious." *Greenbrier Hotel Corp. v. UNITE HERE HEALTH*, No. 16-2116, 2018 WL 272012, at *7 (4th Cir. Jan. 3, 2018); *see also Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ("The United States Supreme Court has dealt with the opaque language in ERISA's § 514(a) approximately twenty times over the last twenty-four years." (quotations omitted)). The *Greenbrier* court clarified the evolving standards between the related, but doctrinally distinct, jurisdictional doctrine of complete preemption under ERISA § 502 and the substantive doctrine of conflict preemption under ERISA § 514. *Greenbrier Hotel Corp.*, 2018 WL 272012, at *7–9. Where, as is the case here, the issue is not jurisdictional, the court must apply the substantive doctrine of conflict preemption. *See Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) ("Complete preemption under [ERISA] § 502(a) is really a jurisdictional rather than a preemption doctrine." (citations omitted)).

"Section 514 . . . provides that ERISA 'shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan' covered by ERISA, so long as those laws do not fall into a narrow category of exemptions." *Id.* at *7 (emphasis added) (quoting ERISA § 514). "In the 1980s," the *Greenbrier* court noted, "a line of Supreme Court cases construed § 514's 'relate to' language in the broadest possible fashion." *Id.* (stating that "the Court interpreted ERISA's scope of preemption as nearly all-encompassing, preempting nearly everything that could be said to 'relate to' an ERISA plan under the ordinary meaning of the term"). The Supreme Court began to retreat from this principle in *N.Y. State Conf. of Blue Cross & Blue*

*Shield Plans v. Travelers, Ins. Co.*, 514 U.S. 645, 655–56 (1995). *Id.* at *8 (quoting *Cal. Div. of Labor Stds. Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 335 (1997) (Scalia, J., concurring) (characterizing the previous interpretation of the "relate to" standard as "a project doomed to failure, since, as many a curbstone philosopher has observed, everything is related to everything else")). According to *Travelers* and its progeny, a substantive preemption doctrine analysis requires the court to determine whether the challenged state law is of the type Congress intended to supersede under § 514—i.e., the court must analyze whether the state law conflicts with the purposes of ERISA. *Id.* (citing *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997)); *see also Travelers*, 514 U.S. at 655 ("[P]re-emption claims turn on Congress's intent.").

ERISA's self-identified primary policy objective is to "protect . . . the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Reviewing this statutorily defined purpose of ERISA, the Supreme Court determined that § 514's preemption provision reflects Congress' intention to preempt state laws that can be said to have a "connection with an ERISA plan." *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1468 (4th Cir. 1996). "Acknowledging that 'connection with' is scarcely more restrictive than 'relate to,'" the Supreme Court has identified at least three categories of state law claims that are said to have a connection with an ERISA plan. *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001). These categories are:

> First, Congress intended ERISA to preempt state laws that "mandate
> [ ] employee benefit structures or their administration." . . .
>
> Second, Congress intended to preempt state laws that bind
> employers or plan administrators to particular choices or preclude

> uniform administrative practice, thereby functioning as a regulation
> of an ERISA plan itself. . . .
>
> Third, in keeping with the purpose of ERISA's preemption clause,
> Congress intended to preempt "state laws providing alternate
> enforcement mechanisms" for employees to obtain ERISA plan
> benefits.

*Id.* (quoting *Travelers*, 514 U.S. at 658). "The basic thrust of the pre-emption clause, then, was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Travelers*, 514 U.S. at 657.

In moving to dismiss, the defendants claim that Counts II, III, and IV appropriately fall into the third category, arguing that the claims have an improper connection with an ERISA plan because they are each grounded in state laws that provide an alternate enforcement mechanism to obtain ERISA plan benefits.

### i. Count II – West Virginia Unfair Trade Practices Act ("WVUTPA")

The WVUTPA regulates trade practices in the insurance industry by defining and prohibiting a number of unfair or deceptive business practices. *See* W. Va. Code § 33-11-1. The plaintiff alleges Aetna violated the WVUTPA by engaging in conduct prohibited by § 33-11-4. Specifically, the plaintiff alleges that Aetna ran afoul of the WVUTPA in the handling, processing, and administration of his plan, and by misrepresenting the extent of his coverage under the plan.

"A state claim is an alternative enforcement mechanism for ERISA rights if the state claim could be brought as an enforcement action under § 502." *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 191 (4th Cir. 2002) ("[D]etermining whether [the plaintiff's] claims are expressly preempted as relating to an ERISA plan under § 514 turns on whether her claims are alternative enforcement mechanisms to ERISA § 502").

Congress intended ERISA's civil-enforcement provision, 29 U.S.C. § 1132(a), "to be the exclusive remedy for rights guaranteed under ERISA." *Ingersoll-Rand Co. v. McClendon*, 498

U.S. 133, 144 (1990). Where "the existence of a pension plan is a critical element of a state-law cause of action," courts have understood that such claims trigger this express preemption statute on grounds that it constitutes an alternative enforcement mechanism to ERISA. *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 776 (7th Cir. 2002) (citing *De Buono*, 520 U.S. at 815).

Here, the plaintiff's allegations are rather undeveloped and conclusory. As a result, the nature of his claims are rather static and otherwise moored entirely to the existence and interpretation of an ERISA plan. To the extent the allegations of wrongdoing are rationally related to the proposed remedies, the WVUTPA claims can only be read reasonably to seek recovery of "the plaintiff['s] insurance benefits due pursuant to the policy." Compl. ¶ 31. Accordingly, insofar as the WVUTPA allegations concern the allegedly improper administration of the ERISA plan, such claims can be characterized as "provid[ing] a separate vehicle" or an alternative means of recovering the plan's benefits, which can otherwise be pursued under § 1132(a)(1)(B). *Davila*, 542 U.S. at 217–18 ("The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA." (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 57 (1987) ("[T]he common-sense understanding of [ERISA § 514], the [state regulation under review], and, most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive, we conclude that [the plaintiff's] state law suit asserting improper processing of a claim for benefits under an ERISA-regulated plan is . . . pre-empted by § 514(a).")))

In addition to impermissibly creating "'an alternative enforcement scheme' to ERISA's own" processing and administrative requirements, subjecting the administration of the plan to scrutiny under the WVUTPA "would conflict with ERISA's proscription against state law

'mandat[ing] plan administration.'" *Zipperer v. Raytheon Co.*, 493 F.3d 50, 54 (1st Cir. 2007) (citing *Travelers*, 514 U.S. at 658–59); *see also Sears Holdings Corp.*, 848 F.3d at 177 (stating that ERISA's "integrated enforcement mechanism . . . is . . . essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans."). Moreover, allowing this claim for the return and retrieval of benefits arising from an ERISA plan to proceed under West Virginia law would inexorably result in inconsistent state regulations, as state courts "develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction. Such an outcome is fundamentally at odds" with ERISA's goal of uniformity. *Ingersoll-Rand Co.*, 498 U.S. at 142.

The plaintiff's remaining WVUPTA allegations concern the purported misrepresentation of coverage. Within this circuit, "when the false representations concern the existence or extent of benefits under an employee benefit plan," courts have consistently found the state law claims to have a sufficient "connection with an ERISA plan." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001). Nothing in the record suggests anything but a similar finding in this case, particularly given the allegations' direct and unequivocal nexus with the ERISA plan described above. As a result, the WVUTPA claims asserted in Count II of the complaint fall into each of the three categories established by the Supreme Court has having a "connection with an ERISA plan." Therefore, I **FIND** that ERISA preempts Count II.

### ii. Count III – Bad Faith

According to the complaint, Aetna violated the implied covenant of good faith and fair dealing by failing to make a reasonable offer to the plaintiff or process and administer his ERISA

plan properly. The plaintiff further represents that Aetna denied the plaintiff the full benefits of the plan intentionally, maliciously, and with a total disregard to his rights.

Under West Virginia law, the breach of "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim." *Highmark W. Va., Inc. v. Jamie*, 655 S.E.2d 509, 514 (W. Va. 2007). Because such claims "sound in breach of contract." *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 578 (W. Va. 2013), and because state law traditionally occupies the field of general contract law, the defendants bear the initial "burden of overcoming the presumption that Congress did not intend to supplant state law." *Greenbrier Hotel Corp.*, 2018 WL 272012, at *9.

In the *Greenbrier* case, the Fourth Circuit found that an agreement between the sponsor of an ERISA plan and a benefit fund governed by ERSIA "only tangentially relates to an ERISA plan," because it "d[id] not implicate other relationships regulated by ERISA or overlap with ERISA's remedial scheme, which contemplates only claims brought by plan participants, beneficiaries, fiduciaries, and the Secretary of Labor—not plan sponsors." *Id.* at *10 (citing ERISA §§ 502(a)(2), 502(a)(3), 29 U.S.C. §§ 1132(a)(2), 1132(a)(3)). Other jurisdictions have applied a similar approach to guide their preemption decisions. The Sixth Circuit, for example, "found that a breach-of-contract claim was not preempted where the conduct at issue related to the 'employment contract irrespective of the plan' even though resolution of the claim affected the plaintiff's right to plan benefits." *Miami Valley Pension Corp.*, 399 F.3d at 698 (citing *Marks v. Newcourt Credit Grp., Inc.*, 342 F.3d 444, 453 (6th Cir.2003)).

However, the Sixth Circuit has also preempted state law breach of contract claims that merely "attach new, state-law labels to the ERISA claims . . . for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA." *Smith v. Provident Bank*,

170 F.3d 609, 615 (6th Cir. 1999) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991) ("It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.")). Likewise, the Fourth Circuit has held that when a state law claim that "seeks to recover benefits of a sort which are already provided by an ERISA plan, even though it seeks to recover them not from the plan itself, but from the employer directly," is preempted by § 514(a). *Stiltner v. Beretta U.S.A. Corp.*, 74 F.3d 1473, 1480 (4th Cir. 1996).

When a plaintiff brings an action to enforce a contract that relies upon the existence and interpretation of an ERISA plan, and the requested relief means being paid under the terms of the plan, it "is of necessity an alternative enforcement mechanism for ERISA § 502 and is therefore 'relate[d] to' an ERISA plan and preempted." *Darcangelo*, 292 F.3d at 195; *Zuniga v. Blue Cross & Blue Shield of Mich.*, 52 F.3d 1395, 1402 (6th Cir. 1995) (citing *McClendon*, 498 U.S. at 140 (finding preemption where a "state cause of action makes specific reference to, and indeed is premised on, the existence of a pension plan" that purports to provide a remedy for the violation of a right expressly guaranteed by ERISA and exclusively enforced by § 502(a)). In such cases, the aforementioned presumption is rebutted because to "allow[] the claim to go forward would thwart the statutory objectives of ERISA." *See Biondi*, 303 F.3d at 775 ("[T]he mere fact that States have traditionally regulated common law [breach of contract] does not, in and of itself, preclude [the plaintiff's] claim from being preempted.").

Here, the breach of contract claim is entirely dependent on the terms of the ERISA and concerns parties directly contemplated by ERISA. *C.f. Pension Plan for Emps. of Battenfeld Grease & Oil Corp. v. Principal Mut. Life Ins. Co.*, 62 F. Supp. 2d 1055, 1060 (W.D.N.Y. 1999) ("The breach of contract claim here is entirely independent of the ERISA pension plan . . . [and]

can stand on its own."); *Arndt v. AON Hewitt Benefit Payment Servs., LLC*, No. 15-C-750, 2015 WL 7313392, at *2 (E.D. Wis. Nov. 19, 2015) (holding that the breach of contract claims were not preempted where the plaintiff "is not seeking benefits allegedly due under the plan in question" as the complaint "goes to great pains to eschew any desire to collect funds he believes are owing"). The rights of the plaintiff and the obligations allegedly breached by Aetna arise entirely from the ERISA plan. In addition, the court cannot reasonably infer any theories or inferences from the plaintiff's rather vague and nebulous general allegations that could support a finding that the breach of contract claims are only tangential to the ERISA plan. Therefore, the same concerns regarding the lack of uniformity justifying preemption of the WVUTPA claims above, counsels in favor of a finding that the breach of contract claims are also preempted. *See Retail Indus. Leaders Ass'n v. Fielder*, 475 F.3d 180, 192–93 (4th Cir. 2007) (stating that "a state law has an impermissible 'connection with' an ERISA plan if it directly regulates . . . some element of the structure or administration of employers' ERISA plans" (footnote omitted)). Furthermore, underlying these allegations of bad faith is the plaintiff's prayer to recover "the plaintiff insurance benefits due pursuant to the policy" – a remedy readily available under ERISA. As a result, this claim similarly constitutes an alternative method of enforcing rights under an ERISA plan.

The court also notes that the plaintiff's claim that Aetna placed their interests above that of their insured is distinct from a breach of contract theory and is instead fundamentally a breach of fiduciary duty claim. This distinction, nonetheless, does not save this aspect of Count III from preemption because, to the extent the plaintiff alleges breach of a fiduciary duty, such a claim "relates to" ERISA in exactly the same manner as claims found to be preempted above. *See Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 344 (4th Cir. 2007) (holding

that "state-law claims [that] merely repackage [an] ERISA claim . . . are preempted by ERISA"). Therefore, I **FIND** that ERISA preempts Count III.

### iii. Count IV – Reasonable Expectations

Underlying Count IV of the complaint is the plaintiff's allegation that Aetna, through communications with the plaintiff, created a reasonable expectation of coverage that Aetna willfully and maliciously disregarded. Compl. ¶¶ 41–44. Under West Virginia law, "the doctrine of reasonable expectations is not a stand-alone cause of action but rather a rule of construction applicable to insurance contracts." *State ex rel. Erie Ins. Prop. & Cas. Co. v. Beane*, No. 15-0968, 2016 WL 3392560, at *2 n.2 (W. Va. June 13, 2016). Rather, the doctrine is a rule of construction, utilized by courts seeking to clarify ambiguous policy provisions. *Id.* As such, I construe the plaintiff's reasonable expectations claim as an additional state-law claim for breach of contract and, for the same reasons articulated above, **FIND** that ERISA preempts Count IV.

## IV. Conclusion

I **FIND** that the proposed amended complaint is futile because proposed Counts I and II fail to establish facial plausibility, and proposed Count III would otherwise be dismissed for failure to exhaust the requisite administrative remedies. I therefore **DENY** the plaintiff's Motion to Amend the Complaint. I further **FIND** that Counts I, V, and VI are dismissed for failure to state a claim upon which relief may be granted, Counts II, III, and IV are substantively preempted by ERISA, and that the plaintiff's administrative remedies under ERISA (Count VII) have not been exhausted. I therefore **GRANT** the defendants' motion to dismiss, and **ORDER** the plaintiff's ERISA claims dismissed without prejudice to allow him to pursue administrative remedies under the plan.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      March 29, 2018

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE